UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER BOFFOLI,<br><br>                                    Plaintiff,<br><br>v.<br><br>LAURIE MCCORMICK,<br><br>                                    Defendant. | Case No.:  25-CV-1528 JLS (VET)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>(ECF No. 10) |

Presently before the Court is Defendant Laurie McCormick's Motion to Dismiss First Amended Complaint ("Mot.," ECF No. 10).  Also before the Court is Plaintiff Christopher Boffoli's Opposition to Defendant's Motion to Dismiss First Amended Complaint ("Opp'n," ECF No. 12), and Defendant's Reply in Support of Motion to Dismiss First Amended Complaint ("Reply," ECF No. 13).  After reviewing Plaintiff's First Amended Complaint ("FAC," ECF No. 8), the Parties' arguments, and the relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion (ECF No. 10).

## BACKGROUND

Plaintiff is "a fine art, editorial, and commercial photographer who created 'Big Appetites,' a series of photographs featuring tiny figures photographed against real food backdrops."  FAC ¶ 7.  Big Appetites has been published in more than 100 countries and

featured in major publications such as the New York Times, Washington Post, NPR, and CBS This Morning. *Id.* Plaintiff's photographs from the Big Appetites collection are displayed and available for purchase in galleries across the world, often licensed for publication in media, and has led to Plaintiff's frequent employment by "top advertising agencies and brands for commercial commissions based on his work." *Id.* ¶¶ 8–9. Plaintiff registered each photograph in the Big Appetites collection with the U.S. Copyright Office. *Id.* ¶ 10. The photographs at issue here are "Papaya Golf" (Copyright Registration Number VAu 1-148-370 and included in the Big Appetites book registration Number VA0001948517) and "Banana Racers" (Copyright Registration Number VAu 1-198-948) (collectively, the "Copyrighted Photographs"). *Id.*

In January 2025, Plaintiff discovered that Defendant was displaying images with content that allegedly infringes on Plaintiff's Copyrighted Photographs. *Id.* ¶ 11. Plaintiff alleges that Defendant's photographs "Papaya Trap" and "The Big Banana" (collectively, the "Disputed Photographs") copy "essential creative elements" of Plaintiff's "Papaya Golf" and "Banana Racers." *Id.* ¶ 12. Plaintiff alleges that the Disputed Photographs are "substantially similar" to the Copyrighted Photographs, and that the Copyrighted Photographs "have been widely published and publicly available since at least 2013 through [Plaintiff's] website, major publications, fine art galleries, and various licensed publications worldwide." *Id.* ¶¶ 12–13.

Plaintiff further alleges that the Disputed Photographs were hosted on Amazon Web Services' ("AWS") servers. *Id.* ¶ 11. On or about January 16, 2025, Plaintiff submitted a takedown notice to AWS, informing AWS of the Disputed Photographs and requesting their removal from ASW's servers. *Id.* ¶ 15. On March 12, 2025, AWS responded and took down the Disputed Photographs. *Id.* On April 17, 2025, Defendant filed a counter-notice—claiming that the Disputed Photographs were not infringing on Plaintiff's copyright. *Id.* ¶ 16. AWS requested "notice that a United States district court lawsuit has been filed." *Id.*

/ / /

On June 13, 2025, Plaintiff filed his complaint (ECF No. 1), which was amended on September 9, 2025 (ECF No. 8), bringing a claim for copyright infringement. On September 23, 2025, Defendant filed the present Motion arguing that Plaintiff has failed to state a claim for copyright infringement. *See generally* Mot.

**The Photographs at Issue**

**Plaintiff Christopher Boffoli: "Banana Racers"**



**Defendant Laurie McCormick: "The Big Banana"**



/ / /

/ / /

/ / /

25-CV-1528 JLS (VET)

**Plaintiff Christopher Boffoli: "Papaya Golf"**



**Defendant Laurie McCormick: "Papaya Trap"**



## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. That is not to say that the claim

25-CV-1528 JLS (VET)

must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557). Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In performing that analysis, "a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alternation in original). If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## DISCUSSION

Defendant argues that Plaintiff fails to state a claim for copyright infringement because Plaintiff fails to adequately allege that Defendant copied the Copyrighted Photographs. Mot. at 10. First, Defendant argues that Plaintiff fails to allege that Defendant accessed the Copyrighted Photographs prior to the publication of the Disputed Photographs. *Id.* at 10–12. Second, Defendant argues that Plaintiff fails to allege substantial similarities between the photographs. *Id.* at 13–18. Defendant does not contest that Plaintiff owns valid copyrights for the Copyrighted Photographs. *See generally id.*

## I.   Copyright Infringement

"To state a claim for copyright infringement, the plaintiff must plausibly allege that she owns a valid copyright, and the defendant copied protected aspects of her work." *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025) (citing *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc)).  "The second prong contains two separate components: 'copying' (or 'factual copying') and illicit copying (or 'unlawful appropriation')." *Id.* (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by*, *Skidmore*, 952 F.3d at 1066–69).

"Because independent creation of a work is a complete defense to copyright infringement, a plaintiff must first adequately plead that the defendant copied the work at issue." *L ALD LLC v. Gray*, No. 24-CV-2195-GPC-MSB, 2025 WL 3228951, at *5 (S.D. Cal. Nov. 18, 2025) (citing *Skidmore*, 952 F.3d at 1064).  Direct evidence of copying is rare; therefore, "copying is often proven circumstantially." *Id.*  To allege copying by circumstantial evidence, the plaintiff must "plead facts plausibly showing either (1) 'that the two works in question are strikingly similar,' or (2) 'that the works are substantially similar and that [the defendant] had access to the [Copyrighted Photographs].'" *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019) (citations omitted) (cleaned up).

The Court agrees with Defendant that Plaintiff does not allege copyright infringement under a "strikingly similar" theory. *See* FAC ¶ 12; Mot. at 11; Opp'n at 13. Therefore, the Court only addresses whether Plaintiff has stated a claim under a "substantially similar" theory.

## II.   Access

First, Defendant argues that Plaintiff fails to adequately allege access because Plaintiff does not allege that Defendant had access to the Copyrighted Photographs, and Plaintiff's allegations regarding widespread dissemination are insufficient.  Mot. at 10–12.

"A showing of access requires 'either evidence of a chain of events between the plaintiff's work and defendants' access to that work or evidence that the plaintiff's work

6

25-CV-1528 JLS (VET)

has been widely disseminated.'" *Biani*, 153 F.4th at 962 (quoting *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017)). "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).

The Court agrees with Defendant that Plaintiff does not appear to allege access based on a "chain of events" theory. *See* FAC ¶ 13; Mot. at 11; Opp'n at 8–10. Therefore, the Court only addresses whether Plaintiff sufficiently pled access under a "widespread dissemination" theory.

### *Widespread Dissemination*

"[U]nder a 'widespread dissemination' theory, a plaintiff may show access by demonstrating that the work has been broadly distributed; evidence of such widespread dissemination often 'centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums.'" *Ambrosetti v. Oregon Cath. Press*, 151 F.4th 1211, 1221 (9th Cir. 2025) (quoting *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016)). "Where the 'relevant market' is smaller, the issue is whether the allegedly copied work 'saturated' that market." *Id.* (cleaned up). There is no bright-line rule "where some number of units distributed always equals—or does not equal—access." *Id.* at 1222 (citations omitted). "Rather, each case must be evaluated based on its 'actual facts' and whether those facts show a 'reasonable opportunity' for a defendant to access a plaintiff's work." *Id.* (citation omitted). "The allegations must, therefore, create more than a bare possibility of access and rise above mere speculation and conjecture." *L ALD LLC*, 2025 WL 3228951, at *6 (citing *Woodland v. Hill*, 136 F.4th 1199, 1207 (9th Cir. 2025), *cert. denied*, 2026 WL 568311 (2026)).

Defendant argues that Plaintiff's only allegation concerning access is that his photographs are "widely published and publicly available." Mot. at 11 (quoting FAC ¶ 13). In her Reply, Defendant also argues that Plaintiff "generally references that his Big Appetites series was featured in media outlets in 2013, but he does not specifically allege

25-CV-1528 JLS (VET)

whether [the Copyrighted Photographs] were published sufficiently for there to have been a reasonable probability for Defendant to have accessed them." Reply at 4. Further, Defendant argues that Plaintiff does not state where the Copyrighted Photographs were published or when they were available. *Id.* at 4–5. Defendant began her "Miniature Appetites" collection—which the Disputed Photographs are a part of—in 2013. *Id.* at 5. "Papaya Trap" was published on December 1, 2013, and "The Big Banana" was published on January 14, 2014. *Id.* Defendant argues that "[t]his fact is crucial, because other than a vague reference to 2013, the FAC is devoid of any detail regarding the timing of when [Plaintiff's] works were available." *Id.* (first citing FAC ¶ 13; and then citing *Klauber Bros., Inc. v. H&M Hennes & Mauritz LP*, No. CV 18-3507-MWF (SSX), 2019 WL 4261878, at *5 (C.D. Cal. June 18, 2019)).

Plaintiff alleges that the Copyrighted Photographs are part of the "Big Appetites" collection, which "has been published in more than 100 countries around the world and has been featured in major publications such as the New York Times, Washington Post, NPR, and CBS This Morning, among many others." FAC ¶ 7. Plaintiff further alleges that the Big Appetites collection "can be found in galleries and private collections in the US, Canada, Europe, and Asia," and that his "images" are frequently "licensed for publication in books, magazines, calendars, online publications, commercial websites, and greeting cards." *Id.* ¶ 8.

Specifically, Plaintiff relies on the Ninth Circuit decision in *Ambrosetti* for the proposition that in niche creative communities—such as miniature food photography—plaintiffs "do[] not need to show widespread dissemination among [artists] generally, but only among members of this small scene." Opp'n at 9 (quoting *Ambrosetti*, 151 F.4th at 1222). Plaintiff argues that the relevant market for widespread dissemination is "photographers who create miniature scenes using food as landscapes," and within this "tiny professional niche, Big Appetites has achieved dominant presence through every meaningful channel, including major media coverage, international gallery representation, commercial licensing, and industry recognition." *Id.* at 10 (citing FAC ¶¶ 7–9). Plaintiff

25-CV-1528 JLS (VET)

states that Defendant is a member of this narrow field, as she confirms that "she has created miniature photography since 2011, maintains a website dedicated to this work, and has received media coverage for her miniature art." *Id.* Thus, Plaintiff concludes that the prominence of his work "in this microscopically small field" while Defendant "actively works in the identical niche" demonstrates a reasonable opportunity of access. *Id.*

At the motion to dismiss phase, the Court concludes that Plaintiff has plausibly alleged a "reasonable opportunity" for Defendant to access the Copyrighted Photographs. *See Ambrosetti*, 151 F.4th at 1221. Plaintiff has alleged that his photographs have reached worldwide recognition within the narrow field of miniature food photography—a group which Defendant has been a member of since 2011. *See* Mot. at 8; FAC ¶¶ 7–9. Plaintiff alleges that the Copyrighted Photographs are a member of the Big Appetites collection, which have been published in "major publications such as the New York Times, Washington Post, NPR, and CBS This Morning." FAC ¶ 7. The Court finds that this plausibly establishes evidence of widespread dissemination as this "often 'centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums.'" *Ambrosetti*, 151 F.4th at 1221 (quoting *Loomis*, 836 F.3d at 997). Here, where the relevant market is smaller, the Court finds that Plaintiff has plausibly alleged "saturation" of the miniature food photography market. *See* FAC ¶¶ 7–9.

Regarding Defendant's arguments, drawing all reasonable inferences in favor of Plaintiff, the Copyrighted Photographs are part of the Big Appetites collection, and thus, when Plaintiff alleges the success of Big Appetites globally, the Court infers that the Copyrighted Photographs are included in those allegations. *See id.* Plaintiff also alleges that these have been available publicly since 2013—making the Copyrighted Photographs plausibly available prior to the creation of the Disputed Photographs, created in late 2013 and early 2014. *See* FAC ¶ 13; Reply at 4–5.

Further, the Court agrees with Plaintiff that Defendant's membership in the niche field of miniature food photography, paired with the success of Plaintiff's Big Appetites

25-CV-1528 JLS (VET)

collection within that field, plausibly alleges that Defendant had a reasonable opportunity to access Plaintiff's Copyrighted Photographs. *See Ambrosetti*, 151 F.4th at 1222 (finding where both plaintiff and defendant were members of the same niche community that plaintiff need not "show widespread dissemination among [photographers] generally, but only among members of this small scene"); *Peterson v. Berggren*, No. 25-CV-1268-AB, 2026 WL 310025, at *7 (D. Or. Feb. 5, 2026) (finding allegations of widespread dissemination sufficient where defendants participated "in the same consumer market" as plaintiff and frequently sold products on the same websites and major retailers); *Browne v. Donalds*, No. 21-CV-2840-AB-AJR, 2024 WL 3468898, at *16 (C.D. Cal. May 28, 2024) ("Drawing all reasonable inferences in Plaintiffs' favor, the success and popularity of [the copyrighted work] in the reggae dancehall scene supports a 'reasonable possibility' that Defendants had the opportunity to hear [the copyrighted work."); *Gregorini v. Apple Inc.*, No. 20-CV-406-SSS-JC, 2024 WL 5264949, at *5 (C.D. Cal. Nov. 25, 2024) (finding at summary judgment that a reasonable possibility that defendants had the chance to view the copyrighted work due to the copyrighted work's "notoriety in the independent film scene during the same time [d]efendants consumed independent films, and when [the disputed work] itself was in development").

Therefore, Plaintiff has plausibly alleged access under a widespread dissemination theory, and Defendant's Motion is **DENIED** on this ground.

## III. Substantial Similarity

Defendant next argues that Plaintiff fails to sufficiently allege substantial similarities between the Copyrighted Photographs and the Disputed Photographs to allege unlawful appropriation. Mot. at 13.

"[C]opyright law does not forbid all copying." *Biani*, 153 F.4th at 963 (quoting *Rentmeester*, 883 F.3d at 1117). Therefore, in addition to copying, a plaintiff must also show "unlawful appropriation." *Id.* "This component requires proof that the defendant copied enough of the plaintiff's protected expression of . . . ideas or concepts to render the two works 'substantially similar.'" *Id.* (quoting *Rentmeester*, 883 F.3d at 1117) (cleaned

25-CV-1528 JLS (VET)

up).  The Ninth Circuit applies a two-part test for substantial similarity—the "extrinsic" and "intrinsic" tests.  *Id.* (citing *Rentmeester*, 883 F.3d at 1118).  "And because a plaintiff must satisfy both the extrinsic and intrinsic tests, failure to meet the extrinsic test is fatal." *Woodland*, 136 F.4th at 1210 (citing *Rentmeester*, 883 F.3d at 1118).

"The extrinsic test assesses the objective similarities of the two works, focusing only on the protectable elements of the plaintiff's expression." *L ALD LLC*, 2025 WL 3228951, at *8 (citing *Rentmeester*, 883 F.3d at 1118).  The court "first filters out 'the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject).'"  *Id.* (quoting *Rentmeester*, 883 F.3d at 1118).  "The remaining protectable elements are then compared 'to corresponding elements of the defendant's work to assess similarities in the objective details of the works.'"  *Id.* (quoting *Rentmeester*, 883 F.3d at 1118).

Regarding photographs, "photos can be broken down into objective elements that reflect the various creative choices the photographer made in composing the image—choices related to subject matter, pose, lighting, camera angle, depth of field, and the like." *Rentmeester*, 883 F.3d at 1119 (citing *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1074–75 (9th Cir. 2000)).  Copyright protection does not extend to these individual elements in isolation, nor can a photographer "claim a monopoly on the right to photograph a particular subject just because he was the first to capture it on film."  *Id.*  "[T]hese objective elements—even 'highly original elements'—are unprotected."  *Woodland*, 136 F.4th at 1210 (citing *Rentmeester*, 883 F.3d at 1119).  However, "[i]f sufficiently original, the combination of subject matter, pose, camera angle, etc., receives protection, not any of the individual elements standing alone." *Rentmeester*, 883 F.3d at 1119.  Therefore, "a photographer's copyright is limited to 'the particular selection and arrangement' of the elements as expressed in the copyrighted image." *Id.* at 1120 (citation omitted).  Thus, "[a] second photographer is free to borrow any of the individual elements featured in a copyrighted photograph, 'so long as the competing work does not feature the same

selection and arrangement' of those elements." *Id.* (citation omitted).  "The two photos' selection and arrangement of elements must be similar enough that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'"  *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960)).

"Only the extrinsic test's application may be decided by the court as a matter of law . . . ."  *L ALD LLC*, 2025 WL 3228951, at *8 (citing *Rentmeester*, 883 F.3d at 1118).  "Although ruling as a matter of law at the pleading stage can sometimes be appropriate, the Ninth Circuit has 'long held that summary judgment is not highly favored on questions of substantial similarity.'"  *Id.* (quoting *Zindel v. Fox Searchlight Pictures, Inc.*, 815 F. App'x 158, 159 (9th Cir. 2020)) (cleaned up).  "Courts must be just as cautious before dismissing a case for lack of substantial similarity on a motion to dismiss." *Zindel*, 815 F. App'x at 159.  "Dismissal is only warranted if, as a matter of law, the similarities between the two works are only unprotectable material or are de minimis, such that reasonable minds could not differ on the issue of substantial similarity." *L ALD LLC*, 2025 WL 3228951, at *8 (collecting cases).  "If additional evidence uncovered in discovery 'could shed light on any issues that actually matter to the outcome,' then dismissal at the pleading stage is inappropriate."  *Id.* (quoting *Rentmeester*, 883 F.3d at 1123).  Further, the "copyrighted and allegedly infringing works must be presented to the court, such that the works are 'capable of examination and comparison.'"  *Zindel*, 815 F. App'x at 159–60 (quoting *Rentmeester*, 883 F.3d at 1123).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### A. *"Banana Racers" vs. "The Big Banana"*

The Court first considers whether Defendant's "The Big Banana" is substantially similar to Plaintiff's "Banana Racers."  The Court concludes it is not.

Plaintiff Christopher Boffoli: "Banana Racers"



Defendant Laurie McCormick: "The Big Banana"



Defendant argues that, like the photographs at issue in *Rentmeester*, "the allegedly infringed and infringing photographs are before the Court[,] and they at most share unprotected elements selected and arranged differently."  Mot. at 15 (citing *Rentmeester*, 883 F.3d at 1121).  Plaintiff argues that Defendant incorrectly focuses on superficial differences omitting "the crucial similarity that both photographers selected the exact same fruit-sport pairing and used the banana's natural curves as a racetrack."  Opp'n at 19.  Both Parties rely on *Rentmeester* and *Woodland* for their respective arguments; thus, the Court considers each in turn.

/ / /

/ / /

/ / /

25-CV-1528 JLS (VET)

In *Rentmeester*, which was decided on a motion to dismiss, the plaintiff sued Nike for alleged infringement of a photo of Michael Jordan leaping with a basketball. *Rentmeester*, 883 F.3d at 1121. The Ninth Circuit "determined that while Nike had borrowed the 'general idea or concept embodied in the [plaintiff's] photo'—Michael Jordan in a leaping, *grand jeté*-inspired pose—Nike 'produced an image that differ[ed] from [the plaintiff's] photo in more than just minor details.'" *Woodland*, 136 F.4th at 1211 (quoting *Rentmeester*, 883 F.3d at 1121) (summarizing the *Rentmeester* decision). The court noted "differences in the positions of Jordan's limbs, the backgrounds and foregrounds, the presence or lack of sun, and the position of the basketball hoop and Jordan's body in the frame." *Id.* (citing *Rentmeester*, 883 F.3d at 1121–22). The Ninth Circuit thus affirmed the district court's dismissal of plaintiff's complaint with prejudice. *Rentmeester*, 883 F.3d at 1125.

Similarly, in *Woodland*, the Ninth Circuit also affirmed the district court's dismissal of plaintiff's second amended complaint without leave to amend. *Woodland*, 136 F.4th at 1217. There, the court noted that while the photographs at issue shared a few similarities, none were substantially similar. *Id.* at 1212. The court analyzed each photo at issue—noting that "objective elements in the photos—the men's poses, colors, lighting, backgrounds, etc.—[were] different, and so the selection and arrangement" of those elements also widely differed. *Id.* While the models in the photographs shared some common poses, these poses are common "in photos of male models and actors" and many of the motifs in the images were common, unprotected ideas in "many pieces of art." *Id.* at 1213–14.

Here, the Court finds that while "The Big Banana" and "Banana Racers" share a common subject—bananas and bicycle riders—almost all the other aspects of the image differ. For example, in Plaintiff's "Banana Racers," the bananas are turned down toward the table with the bikers riding over the top, the background is a light purple, there are strawberries in the foreground, the framing is zoomed out and not focused on any single rider, and the angle is of the bananas to the side. In Defendant's "The Big Banana," the

bananas are turned toward the ceiling with the bikers ascending the bananas, the background is dark, and the angle is zoomed in close, focused on one rider who appears to be winning the race.

While these images share some objective similarities, e.g., bike riders and bananas, their selection and arrangement substantially differ. While Defendant may have "borrowed the 'general idea or concept embodied in [Plaintiff's] photo,'" *Woodland*, 136 F.4th at 1211 (quoting *Rentmeester*, 883 F.3d at 1121), "[a] second photographer is free to borrow any of the individual elements featured in a copyrighted photograph, 'so long as the competing work does not feature the same selection and arrangement' of those elements," *Rentmeester*, 883 F.3d at 1120 (citation omitted). Therefore, "The Big Banana" and "Banana Racers" are "as a matter of law not substantially similar." *Woodland*, 136 F.4th at 1211 (citing *Rentmeester*, 883 F.3d at 1125). Defendant's Motion is **GRANTED** as to "The Big Banana" and "Banana Racers."

### *Leave to Amend*

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But while the rule should be interpreted liberally, leave should not be granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). In determining whether to grant leave to amend, trial courts should consider various factors, including bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the party has previously amended. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Applying the *Foman* factors, the Court declines to grant Plaintiff leave to amend. Here, the copyrighted and allegedly infringing works were presented to the court, such that the works were "capable of examination and comparison." *Zindel*, 815 F. App'x at 159–60 (quoting *Rentmeester*, 883 F.3d at 1123). Further, "The Big Banana" and "Banana Racers" are as a matter of law not substantially similar, and no new allegations would change this dispositive fact. *See Rentmeester*, 883 F.3d at 1125; *Anton Int'l v. Gaojing Wei*, No. 21-CV-121-JWH-KKx, 2021 WL 3017996, at *5 (C.D. Cal. Apr. 28, 2021) ("No additional facts could cure this defect, because [the plaintiff] has already submitted

25-CV-1528 JLS (VET)

photographs that permit the Court to compare [the plaintiff's] works to [the defendant's] products."). Therefore, Court finds that "it is clear that granting leave to amend would [be] futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

### B. "Papaya Golf" vs. "Papaya Trap"

The Court next considers whether Defendant's "Papaya Trap" is substantially similar to Plaintiff's "Papaya Golf." The Court concludes that it is.

Plaintiff Christopher Boffoli: "Papaya Golf"



Defendant Laurie McCormick: "Papaya Trap"



Defendant argues that the only similarity between the photographs is that they both depict a golfer on a papaya, but otherwise the images differ in camera angle, color palette, style of miniatures, and artistic tone. Mot. at 17–18. Plaintiff argues that Defendant catalogs "irrelevant differences while minimizing or omitting the core similarities in protected expression." Opp'n at 22. Plaintiff asserts that the creative combination of the papaya, golfers, and papaya seeds as a golf obstacle are a protected selection and arrangement of elements. *Id.* at 22–23.

/ / /

/ / /

25-CV-1528 JLS (VET)

Here, the Court finds that, at the pleading stage, Defendant's "Papaya Trap" is substantially similar to Plaintiff's "Papaya Golf." Both images depict a golfer on a papaya with the papaya seeds depicting a golf obstacle. Both images are centered on one golfer located near the papaya seed obstacle and are surrounded by a dark background. The only significant difference between the images is the number of golfers and the papaya's slight change in position within the frame. The Court finds that "the differences in details between [the photographs] are easily overlooked" and the difference in the minor details "are more indicative of deliberate copying rather than producing an image unmistakably different in material details." *Peterson*, 2026 WL 310025, at *10; *Moebius v. HB USA Holdings, Inc.*, CV 21-2109-CJC(PVCx), 2021 WL 9747624, at *3 (C.D. Cal. July 16, 2021) (finding substantial similarity in photographs of a woman peering through blue blinds when the arrangement of "elements suggest[ed] an intentionality and expression which the Court [found] to be substantially similar between the two works").

Further, "not only does the complaint plead the similarities between the works, but it 'provides side-by-side pictures that make the similarities apparent.'" *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 968 (N.D. Cal. 2019) (denying motion to dismiss and finding substantial similarities where the two sculptures had "similar general arrangements, with similar cluster patterns, presented in nearly the same way") (quoting *Malibu Textiles*, 922 F.3d at 953); *Malibu Textiles*, 922 F.3d at 953 (finding substantial similarity where the works contained "nearly identical floral, leaf, boteh, and dot elements, and those elements are arranged in virtually the same way"). The selection and arrangement of elements between "Papaya Trap" and "Papaya Golf" are similar enough that "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them." *Peter Pan Fabrics*, 274 F.2d at 489.

Therefore, Plaintiff has sufficiently alleged that "Papaya Trap" is substantially similar to "Papaya Golf." Defendant's Motion is **DENIED** as to these photographs.

/ / /

/ / /

25-CV-1528 JLS (VET)

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss First Amended Complaint ("Mot.," ECF No. 10). Plaintiff's claim for copyright infringement as applied to "Banana Racers" is **DISMISSED WITHOUT LEAVE TO AMEND**.  Defendants **SHALL** file an answer within <u>thirty (30)</u> days of the electronic docketing of this Order regarding Plaintiff's claim for copyright infringement as applied to "Papaya Golf."

**IT IS SO ORDERED.**

Dated:  April 7, 2026

Hon. Janis L. Sammartino
United States District Judge

25-CV-1528 JLS (VET)